**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| **NAUN ALEXANDER U.M.,** | : | |
| | : | Civil Action No. 17-7113 (ES) |
| Petitioner, | : | |
| | : | |
| v. | : | MEMORANDUM OPINION |
| | : | |
| **RONALD EDWARDS,** | : | |
| | : | |
| Respondent. | : | |

**SALAS, DISTRICT JUDGE**

It appearing that:

1. At the time of filing, Petitioner Naun Alexander U.M. ("Petitioner") was being detained by the Department of Homeland Security, Immigration and Customs Enforcement ("DHS/ICE") at the Hudson County Correctional Facility in Kearny, New Jersey, pending his removal from the United States. On September 14, 2017, Petitioner filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, in which he challenges his detention pending removal. (D.E. No. 1, Petition ("Pet.")).

2. Petitioner entered this country on December 29, 2015, when he was seventeen years old, and, as a result, he obtained Unaccompanied Alien Child ("UAC") status by U.S Customs and Border Protection and was transferred to the custody of the Office of Refugee Resettlement pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA") and the *Flores* Settlement Agreement. (Pet. ¶ 6).

3. He was released into the custody of his father and, on December 13, 2016, after he turned eighteen years old, he applied for asylum. (D.E. No. 7, Respondent's Answer ("Answer") at 3).

4. On June 14, 2017, Homeland Security Investigations arrested Petitioner, allegedly based on suspicion that he was a gang member. (Pet. ¶ 6). Petitioner was detained at Hudson County Jail and, on August 4, 2017, an immigration judge denied bond, finding that Petitioner is an "arriving alien" and she therefore lacked jurisdiction to grant bond. (Answer at 3).

5. In his Petition, Petitioner argues that his classification as a UAC has not changed, despite the fact that he has since turned eighteen, and he is therefore entitled to a bond hearing pursuant to the TVPRA. (Pet. ¶ 7). Specifically, he relies upon 8 U.S.C. § 1232(c)(2)(B) which provides that:

> [i]f a minor described in subparagraph (A) reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight. Such aliens shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include placement of the alien with an individual or an organizational sponsor, or in a supervised group home.

6. As relief, Petitioner requests that the Court grant Petitioner's immediate release on reasonable bail or order ICE to afford Petitioner with an individualized bond hearing before an immigration judge. (Pet. at 21).

7. In response to this Court's Order to Answer (D.E. No. 2), Respondent filed an Answer (D.E. Nos. 7 & 8) and Petitioner filed a Reply (D.E. No. 9). After reviewing the parties' submissions, the Court determined that supplemental briefing on a case relied upon by Petitioner in his Reply, as well as clarification from the Government regarding the applicability of § 1232 (c)(2)(B), would be beneficial. (D.E. No. 10). The parties filed their supplemental briefs. (D.E. Nos. 11 & 12). In his supplemental brief, Petitioner raises a new argument: because Respondent

detained Petitioner and "stripped him of his TVPRA protections," Petitioner's asylum case was in immigration court instead of under the U.S. Citizenship and Immigration Services ("USCIS"). (D.E. No. 12 at 7). In that submission, Petitioner still requested that the Court order the immigration court to hold a bond hearing, but now also requested the Court transfer the jurisdiction of Petitioner's asylum case to USCIS. (*Id.* at 9).

8. Shortly thereafter, the Court determined that a second round of supplemental briefing was needed to address the Supreme Court's recent decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), which had been decided during the parties' prior supplemental briefing, as well as to clarify the Government's position on other arguments by Petitioner. (D.E. No. 13). The parties filed their second set of supplemental briefs. (D.E. Nos. 14 & 15). After reviewing the parties' briefing, the Court scheduled this matter for oral argument on July 24, 2018. (D.E. No. 16).

9. Prior to oral argument, Petitioner submitted a recent decision from a court in the Southern District of New York which he believed was persuasive and requested that the Court suspend oral argument and grant Petitioner's release. (D.E. No. 18). In the response to that submission, Respondent informed the Court that Petitioner was now subject to a final order of removal because the Board of Immigration Appeals had dismissed his appeal of the immigration judge's denial of his asylum application and Petitioner had not filed a petition for review with the Second Circuit. (D.E. No. 20).

10. In light of the fact that Petitioner had not filed a petition for review with the Second Circuit, and because it appeared that Petitioner was now subject to a final order of removal, the Court canceled the oral argument and ordered the parties to address the issue of whether the Petition challenging his pre-removal-order detention had been rendered moot. (D.E. No. 21).

3

11. In Petitioner's response, he argues that collateral consequences stemming from the habeas petition remain even after Petitioner is deported; specifically, the lack of opportunity to challenge Petitioner's gang status in a bond hearing and the request to transfer of his asylum case to USCIS. (D.E. No. 22).

12. In their response, Respondent argues that the only issue for this Court to decide in the instant habeas Petition is whether Petitioner's detention is lawful. (D.E. No. 23). Any other issues, such as Petitioner's gang status and jurisdiction for his asylum application, are simply not properly before this Court. (*Id.*).

13. On July 24, 2018, Respondent submitted a letter informing the Court that Petitioner has been removed from the United States. (D.E. Nos. 27 & 28).

14. The instant Petition sought only a bond hearing or Petitioner's release from immigration custody. As he is no longer in the custody of immigration officials because he has been removed from the United States, the Court cannot provide him with that requested relief. Petitioner's habeas petition therefore, no longer presents a live case or controversy. *See, e.g.*, *Lindaastuty v. Attorney Gen.*, 186 F. App'x 294, 298 (3d Cir. 2006) (holding that habeas petition challenging immigration detention became moot due to deportation from the United States).

15. To the extent Petitioner argues that his subsequent request to transfer his asylum application from the immigration court to USCIS remains viable, even after his release from immigration custody and removal from the United States, the Court notes at the outset that he did not request this relief in his Petition. Rather, he only challenged his detention during his immigration proceedings and sought a bond hearing. (D.E. No. 1). Furthermore, at this juncture, there is no asylum case to order transfer from the immigration courts to the USCIS. The

immigration judge denied Petitioner's relief; the BIA dismissed his appeal; and he opted not to file a petition for review with the Second Circuit, which terminated the matter.[1]

16. In light of the foregoing, the Court will DISMISS this matter *without prejudice*.

17. An appropriate Order follows.

*s/ Esther Salas*  
**Esther Salas, U.S.D.J.**

---

[1] It appears that even if Petitioner did have a pending asylum application to transfer, and a transfer could properly be considered by this Court, Petitioner would not be entitled to that relief. *See Mazariegos-Diaz v. Lynch*, 605 F. App'x 675, 676 (9th Cir. 2015) ("A person's status as an unaccompanied alien child for purposes of the TVPRA's initial-jurisdiction provision is determined as of the date the person applies for asylum, not as of the date the person enters the United States or the date the person was abandoned by his or her parents . . . . Mazariegos–Diaz was twenty years old when he applied for asylum; as he was over eighteen years of age, he was not an unaccompanied alien child.") (internal citations omitted); *Harmon v. Holder*, 758 F.3d 728, 735 (6th Cir. 2014) ("[T]he TVPRA does not transfer initial jurisdiction over asylum applications filed by former unaccompanied alien children to the USCIS. The IJ, therefore, had the authority to review Harmon's asylum claim.").